## Medical Services for Injured Workmen.

*Workmen's compensation — State insurance fund—Payments—Extension of payments—Discretion of board—Acts of June 2, 1915, and July 20, 1917.*

1. The State Workmen's Insurance Board may, under the Acts of June 2, 1915, P. L. 762, and July 20, 1917, P. L. 1139, in its discretion, so as to administer properly the fund in its hands, pay more than $100 for medical service, medicine and supplies to an injured workman employed by a policy-holder of the fund.

2. The board may also, in the proper exercise of its discretion, make such payments for a greater period than thirty days after the disability arises.

Department of Justice. Opinion to Hon. R. H. Lansburgh, Chairman, State Workmen's Insurance Board.

WOODRUFF, Att'y-Gen., Sept. 13, 1926.—Some months ago you requested to be advised whether or not the Workmen's Insurance Board has authority:

1. Under any circumstances to authorize the payment of more than one hundred dollars ($100.00) for medical services, medicines and supplies for employees of policy-holders of the State Workmen's Insurance Fund, entitled, because of injuries received, to have such services and supplies furnished by their employer under the provisions of the Workmen's Compensation Act; and

2. To pay for such medical services, medicines and supplies for a greater period than the first thirty days after disability begins.

Under date of June 8th we answered your inquiry, but have since had occasion to reconsider the opinion then expressed. Accordingly, this opinion will supersede that heretofore rendered.

The Workmen's Insurance Board was created by the Act of June 2, 1915, P. L. 762, for the purpose of administering "The State Workmen's Insurance Fund," which was also created by that act.

The State Workmen's Insurance Fund consists of:

1. The premiums paid by subscribers thereto, who, as employers, are obliged to carry workmen's compensation insurance, unless exempted from the duty of so doing by the Department of Labor and Industry.

2. A surplus accumulated out of premiums and set apart to cover the catastrophe hazard of the subscribers to the fund and to guarantee its solvency; and

3. Reserves adequate to make future disbursements on account of past injuries to or death of employees of subscribers to the fund.

The rates payable by subscibers are those established by the Rating Bureau, which determines all workmen's compensation insurance rates chargeable in Pennsylvania and must be paid in full to the Workmen's Compensation Board, but under section 11 of the Act of June 2, 1915, as amended by the Act of July 20, 1917, P. L. 1139, the Workmen's Insurance Board is directed at the expiration of every year, if there shall be a balance remaining after deducting the disbursements on account of injuries to employees of subscribers and for administering the fund, the unearned premiums on undetermined risks and the percentage of premiums paid or payable to maintain the surplus required by the act and after setting aside an adequate reserve, to distribute as much of the balance among the subscribers as the board may determine to be safely distributable.

Under this section of the Act of 1915, as amended, subscribers to the Workmen's Insurance Fund have an interest in the economical administration of the fund, and it is clear that the Workmen's Insurance Board has a two-fold function to perform, namely, to see to it that payments of workmen's compensation are made to employees or dependents of employees of subscribers

to the fund as provided by law, and, in addition, to conserve the assets of the Workmen's Insurance Fund for the benefit of the subscribers thereto.

Section 13 of the Act of June 2, 1915, P. L. 762, is as follows: "The said board shall have the power to make all contracts necessary for supplying medical, hospital and surgical services, as provided in section 306, sub-section *(e)*, article III, of the Workmen's Compensation Act of 1915."

Section 20 of the act provides that a subscriber to the fund, upon giving notice within a prescribed time of the happening of an accident to his employee, shall be discharged from all liability for the payment of compensation for the personal injury or death of such employee by such accident, but that nothing in the section "shall discharge any employer from the duty of supplying the medical and surgical services, medicines and supplies required by section 306 of the Workmen's Compensation Act of 1915: And provided, further, that any subscriber who has supplied such services, medicines and supplies shall be reimbursed therefor from the fund."

Section 306*(e)*, article III, of the Workmen's Compensation Act of 1915 (Act of June 2, 1915, P. L. 736), as amended by the Act of June 26, 1919, P. L. 642, is as follows: "*(e)* During the first thirty days after disability begins, the employer shall furnish reasonable surgical and medical services, medicines and supplies as and when needed, unless the employee refuses to allow them to be furnished by the employer. The cost of such services, medicines and supplies shall not exceed one hundred dollars. If the employer shall, upon application made to him, refuse to furnish such services, medicines and supplies, the employee may procure the same, and shall receive from the employer the reasonable cost thereof within the above limitations. In addition to the above services, medicines and supplies, hospital treatment, services and supplies shall be furnished by the employer for the said period of thirty days. The cost for such hospital treatment, service and supplies shall not in any case exceed the prevailing charge in the hospitals for like services to other individuals. If the employee shall refuse reasonable surgical, medical and hospital services, medicines and supplies tendered to him by his employer, he shall forfeit all right to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

As the Workmen's Insurance Board is authorized by section 13 of the Act of June 2, 1915, P. L. 762, to make all contracts necessary for supplying medical, hospital and surgical services as provided in the above-quoted provision of the Workmen's Compensation Act, it is necessary to consider the meaning and effect of that provision. Section 306*(e)* of the Workmen's Compensation Act prescribes the *employer's duty* to furnish medical and hospital services, medicines and supplies. It provides that such services must be furnished during the first thirty days after disability. It also provides that the cost of surgical and medical services, medicines and supplies shall not exceed $100. Clearly this limitation does not render it unlawful for an employer to furnish surgical and medical services, medicines and supplies for more than thirty days or costing more than $100. The plain intent of the legislature was to place a limitation upon the employee's right to demand hospital, surgical or medical services, medicines and supplies. If by furnishing such services, medicines or supplies for more than thirty days or by spending more than $100 for surgical or medical services the duration of the employee's disability can be shortened, or if by hospital or medical or surgical attention for more than thirty days or the expenditure of more than $100 the loss of a member can be avoided, clearly an employer is not violating either the letter or the spirit of the Workmen's Compensation Act in thus benefiting

his employee and at the same time reducing, or attempting to reduce, his financial outlay for weekly compensation payments.

Similarly, an insurance carrier other than the State Workmen's Insurance Fund may without any violation of the compensation laws extend beyond thirty days the period of hospital or surgical or medical treatment rendered to an employee or expend in surgical or medical treatment more than $100, notwithstanding the fact that the insurance company's primary purpose is by reducing the period of disability or preventing the loss of a member to diminish the cost to the insurance company of the accident.

If, under section 306(e) of the Workmen's Compensation Act of 1915, as amended, employers and their insurance carriers, other than the State Workmen's Insurance Fund, may lawfully extend the period of surgical or medical services or exceed an expense of $100 in rendering such services, is there anything in the Workmen's Insurance Fund, Act (P. L. 762) of 1915, which prevents the Workmen's Insurance Board from administering the Workmen's Insurance Fund along similar lines for the pupose of minimizing disbursements and increasing the dividends payable to subscribers?

We are of the opinion that this question must be answered in the negative.

In authorizing the Workmen's Insurance Board to make contracts necessary for supplying medical, hospital and surgical services as provided in section 306(e) of the Workmen's Compensation Act, the Workmen's Insurance Board is given authority in all cases to contract for rendering such services to injured employees of subscribers for the period during which such service is mandatory and in the amount which the employee is entitled to demand that the employer shall spend in his behalf if necessary. The board is not prohibited from going further if by so doing it believes it can conserve the assets of the fund. The board could not pay to an injured employee more than $100 to reimburse him for his surgical or medical expenses, nor could it pay to the employee the cost of hospital services beyond the first thirty days after the commencement of disability. Nor could the board reimburse an employer for his expenditures on behalf of an employee in excess of the above limitations. The board may, however, as a matter of administration, contract with a surgeon or a physician or a hospital to care for the employee of one of its subscribers after the first thirty days of disability have expired, and even though it has already expended $100 for surgical or medical expenses, if, in the judgment of the board, such additional care will lessen the period of disability to such an extent as to save the fund more than the cost of the additional surgical or medical or hospital services. We are further of the opinion that for any possible error of judgment in this regard, the members of the board could not be held personally liable for the excess expenditures.

It would, of course, be unlawful for the board, out of a spirit of generosity, to agree to furnish surgical or medical or hospital services to an injured employee for a period greater than thirty days or to expend more than $100 for surgical or medical services if there were no prospect by such additional period of service or such additional expenditure of money of reducing the duration of disability or avoiding the loss of a member, as the case may be, and thereby saving money for the fund. As trustee of the fund administered by them, the members of the board have no power to expend any of the moneys of the fund for charitable purposes. They do, however, have the power, and, in our opinion, it is their duty, if, upon competent advice, they believe that an expenditure for surgical, medical or hospital services beyond the required period or in excess of the required amount will save money to the fund, to contract for the rendering of such extended service or the expen-

diture of such excess amount. Any other conclusion would be incompatible with the clearly-expressed theory upon which the fund was created, namely, that it is to be administered for the benefit of the subscribers thereto and of their employees.

From C. P. Addams, Harrisburg, Pa.